**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ALEXANDRO GONZALEZ, individually and on behalf of all others similarly situated, | ) ) ) ) | **CIVIL ACTION NO.:** |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| JPMORGAN CHASE BANK, NA, THE BOARD OF DIRECTORS OF JPMORGAN CHASE BANK, NA, JPMORGAN CHASE U.S. BENEFITS EXECUTIVE, THE SELECTION COMMITTEE, THE EMPLOYEE PLANS INVESTMENT COMMITTEE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiff, Alexandro Gonzalez, ("Plaintiff"), by and through his attorneys, on behalf of the JPMorgan Chase 401(k) Savings Plan (the "Plan"),[1] himself and all others similarly situated, states and alleges as follows:

---

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

## I.    INTRODUCTION

1.    This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciary, JPMorgan Chase Bank, NA ("JPMorgan" or the "Company"), the Board of Directors of JPMorgan Chase Bank, NA (the "Board"), the JPMorgan Chase U.S. Benefits Executive (the "Benefits Executive"), the Selection Committee, and the Employee Plans Investment Committee (the "Investment Committee") for breaches of its fiduciary duties.

2.    The Plan is a defined contribution retirement plan, established pursuant to 29 U.S.C. § 1002(2)(A) and § 1002(34) of ERISA, that enables eligible participants to make tax-deferred contributions from their salaries to the Plan.

3.    To safeguard plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. 29 U.S.C. § 1104(a)(1)(B).  These twin fiduciary duties are "the highest known to the law." *Sweda v. Univ. of Pennsylvania,* 923 F.3d 320, 333 (3d Cir. 2019).

4.    The Department of Labor ("DOL") has explicitly stated that employers are held to a "high standard of care and diligence" and must, among other duties,

both "establish a prudent process for selecting investment options and service providers."[2]; *see also Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1823 (2015) ("*Tibble I*") (reaffirming the ongoing fiduciary duty to monitor a plan's investment options).

5.      Under 29 U.S.C. § 1104(a)(1), a plan fiduciary must give substantial consideration to the cost of investment options. "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act (the "UPIA"), § 7.

6.      "The Restatement … instructs that 'cost-conscious management is fundamental to prudence in the investment function,' and should be applied 'not only in making investments but also in monitoring and reviewing investments.'" *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en banc*) (quoting Restatement (Third) of Trusts, § 90, cmt. b) ("*Tibble II*").

7.      Additional fees of only 0.18% or 0.4% can have a large effect on a participant's investment results over time because "[b]eneficiaries subject to higher fees … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble II*, 843 F.3d at 1198 ("It is

---

[2] *See* U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, (Sept. 2019), at 2, available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited July 24, 2024).

beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks.").

8.    The Supreme Court recently reiterated that interpreting "ERISA's duty of prudence in light of the common law of trusts" a fiduciary "has a continuing duty of some kind to monitor investments and remove imprudent ones" and a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 741 (2022).

9.    Plaintiff alleges that during the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties it owed to the Plan, to Plaintiff, and to the other participants of the Plan by, *inter alia*, failing to objectively and adequately review the Plan's investment portfolio, initially and on an ongoing basis, with due care to ensure that each investment option was prudent, in terms of performance.

10.    At all times during the Class Period, the Plan had over thirty billion dollars in assets under management. At the start of the Class Period in 2020, the Plan had over $36 billion in assets under management. *See* 2020 Form 5500 for the Plan ("2019 Form 5500"), Schedule H at 2.

11.    By 2023, the Plan had over $44 billion in assets under management. *See* 2023 Form 5500 for the Plan ("2023 Form 5500"), Schedule H at 2.

12.    The Plan's assets under management qualifies it as a jumbo plan in the defined contribution plan marketplace, and among the largest plans in the United States.  In 2021, only 0.2 percent (1,011 of 641,747) of plans in the country had more than $1 billion in assets under management.[3] In addition, this was true at the start of the Class Period in 2020 where only 0.1 percent (892 of 616,050) of 401(k) plans in the country were as large as the Plan.[4]

13.    As a jumbo plan, the Plan had substantial bargaining power regarding the fees and expenses that were charged against participants' investments.

14.    The Plan is also large in terms of the number of its participants. At the beginning of the Class Period, the Plan had 264,210 participants. *See* 2020 Form 5500, at 2. By 2023, the Plan had 295,407 participants. *See* 2023 Form 5500, at 2. For comparison, according to information derived from ERISApedia.com's database, a service that compiles all Form 5500s filed with the Dept. of Labor ("DOL") by retirement plans, in 2020, there were only 123 defined contribution plans (401k, 401a, and 403b) in the country with over 50,000 participants with account balances.

---

[3] *See* The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at Plans, 2021 at Ex. 1.2, p. 7., available at https://www.ici.org/system/files/2024-08/24-ppr-dcplan-profile-401k.pdf.

[4] *See* The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2020 at Ex. 1.2, p. 7, available at https://www.ici.org/system/files/2023-09/23-rpt-dcplan-profile-401k.pdf.

15. With regard to the Plan's investments, Defendants breached their fiduciary duty of prudence by selecting and/or maintaining a certain stable-value investment with lower crediting rates when compared to available similar or identical investments with higher crediting rates. The crediting rate is the guaranteed rate of return for the investment fund.

16. Specifically, Defendants allowed substantial assets in the Plan to be invested in the JPMorgan Stable Value Fund ("JPMorgan SVF"), that invested in synthetic guaranteed investment contracts ("GICs") offered by MetLife, Prudential, Transamerica, and VOYA (the "Insurance Companies"), that provided significantly lower rates of return than comparable stable value funds that Defendants could have made available to Plan participants.

17. A prudent fiduciary would not have included this underperforming investment option that also carried significantly more risk than other investment options that had similar goals, *i.e.,* preservation of investment assets.

18. The Insurance Companies benefited significantly from participants in the Plan investing in the JPMorgan SVF. A prudent fiduciary who adequately monitored the Plan's investments and placed the interests of participants in the Plan above all would have recognized that the JPMorgan SVF was benefitting the Insurance Companies at the expense of the participants in the Plan. The investments in the JPMorgan SVF were held and invested by the Insurance Companies, which

6

kept the spread (the difference between the amount it earned on the investment and the amount it paid to the Plan's participants). The crediting rates that the Insurance Companies provided to the Plan were and are so low that the Insurance Companies reaped a windfall on the spread.

19.    During the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties owed to the Plan, to Plaintiff, and to the other participants of the Plan by, *inter alia*, failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost and performance.

20.    Defendants' mismanagement of the Plan, to the detriment of participants and beneficiaries, constitutes a breach of the fiduciary duties of prudence, in violation of 29 U.S.C. § 1104. Their actions were contrary to actions of a reasonable fiduciary and cost the Plan and its participants millions of dollars.

21.    Based on this conduct, Plaintiff asserts claims against Defendants for breach of the fiduciary duty of prudence (Count I) and failure to monitor fiduciaries (Count II).

## II.   JURISDICTION AND VENUE

22.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq.*

23.   This Court has personal jurisdiction over Defendants because the Plan is administered in this District meaning JPMorgan transacts business in this District, resides in this District, and/or has significant contacts with this District, and because ERISA provides for nationwide service of process.

24.   Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because JPMorgan does business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.   PARTIES

### Plaintiff

25.   Plaintiff, Alexandro Gonzalez ("Gonzalez"), resides in Chicago, IL. During his employment, Plaintiff Gonzalez participated in the Plan. Mr. Gonzalez

8

invested in the JPMorgan SVF in the Plan and suffered injury to his Plan account due to the significant underperformance of the JPMorgan SVF.

26. Plaintiff has standing to bring this action on behalf of the Plan because he participated in the Plan and was injured by Defendants' unlawful conduct. Plaintiff is entitled to receive benefits in the amount of the difference between the value of his account currently, or as of the time his account was distributed, and what his account is or would have been worth, but for Defendants' breaches of fiduciary duties as described herein.

27. Plaintiff did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**Defendants**

### *Company Defendant*

28. JPMorgan Chase Bank, NA is the sponsor of the Plan and a named fiduciary of the Plan with a principal place of business at 545 Washington Boulevard, Jersey City, New Jersey. *See* 2023 Form 5500, at 1, filed with the United States Department of Labor. JPMorgan is the U.S. consumer and commercial

banking business of JPMorgan Chase & Co., a leading global financial services firm with $2.6 trillion in assets and operations worldwide.[5]

29.     The Company is a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A). Through its Board, JPMorgan appointed the Benefits Executive to serve as the Plan Administrator. *See* JPMorgan Chase 401(k) Savings Plan, effective January 1, 2021 ("Plan Doc."), at 66 ("The Benefits Executive of the Company or any other person or persons designated by the Board shall be the Plan Administrator."); *see also* Independent Auditor's Report attached to the 2023 Form 5500 ("2023 Auditor's Report"), at 6 ("The Plan is administered by the plan administrator who is appointed by the Board of Directors of JPMorgan Chase or JPMorgan Chase Bank, N.A."). Under ERISA, fiduciaries with the power to appoint have a concomitant fiduciary duty to monitor and supervise their appointees.

30.     Further, at all times, JPMorgan acted through its officers to perform Plan-related fiduciary functions. These officers were acting in the course and scope of their employment.

---

[5]  *See*  https://www.chase.com/digital/resources/about-chase  last  accessed  on February 24, 2025.

31.    Accordingly, JPMorgan during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had a duty to monitor the actions of the Benefits Executive.

### *Board Defendants*

32.    The Company acted through the Board to perform the Company's Plan-related fiduciary functions. As indicated above, the Board appointed the Benefits Executive to serve as the Plan Administrator. Accordingly, the Board had the fiduciary duty to monitor and supervise the Benefits Executive while it performed its fiduciary role.

33.    Further, "[t]he Board designated a Selection Committee as Named Fiduciary under the Plan." Plan Doc., at 67. Accordingly, the Board had the fiduciary duty to monitor and supervise the Selection Committee while it performed its fiduciary role.

34.    Each member of the Board during the putative Class Period (referred to herein as John Does 1-10) is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), during the Class Period, because each exercised discretionary authority to appoint and/or monitor the Benefits Executive, which had control over Plan management and/or authority or control over management or disposition of Plan assets.

35. Members of the Board of Directors for JPMorgan during the Class Period are collectively referred to herein as the "Board Defendants."

### Benefits Executive Defendant

36. JPMorgan Chase U.S. Benefits Executive is identified as the Plan Administrator in the Form 5500. *See* 2023 Form 5500, at 2. Further, "[t]he Benefits Executive of the Company or any other person or persons designated by the Board shall be the Plan Administrator." Plan Doc., at 66; see also 410(k) Savings Plan Summary Plan Description JPMorgan Chase, January 1, 2019 ("SPD") at 53 (identifying JPMorgan Chase & Co. U.S. Benefits Executive as "Plan Administrator").

37. "The Plan Administrator [Benefits Executive] shall have the powers and duties set forth in the Plan and those of an administrator under ERISA and shall have the powers under the Plan required in order to carry out such duties." *Id.*

38. "In addition, the Plan Administrator [Benefits Executive] shall have the authority jointly to control and manage, as a Named Fiduciary, the operation and administration of the Plan[.]" *Id.*

### The Selection Committee

39. As indicated above, the Board designated a Selection Committee as a named fiduciary of the Plan. *See* Plan Doc., at 67.

40. "The sole duties and responsibilities of the Selection Committee are to appoint member of the Employee Plans Investment Committee." *Id.* Accordingly, the Selection Committee had the fiduciary duty to monitor and supervise the Employee Plans Investment Committee while it performed its fiduciary role.

41. The Selection Committee and members of the Selection Committee during the Class Period (referred to herein as John Does 11-20), are collectively referred to herein as the "Selection Committee Defendants."

### *The Employee Plans Investment Committee*

42. "[T]he Employee Plans Investment Committee shall be the Named Fiduciary with respect to control and management of the assets of the Plan. It shall have the exclusive power to manage, invest and reinvest (including the power to acquire and dispose of) assets of the Plan." Plan Doc., at 67.

43. The Investment Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because each exercised discretionary authority over management or disposition of Plan assets.

44. The Investment Committee and members of the Investment Committee during the Class Period (referred to herein as John Does 21-30), are collectively referred to herein as the "Investment Committee Defendants."

13

45.     "Collectively, the Selection Committee, Plan Administrator [Benefits Executive], … and the Employee Plans Investment Committee shall be referred to herein as the 'Named Fiduciaries' and the provisions hereof shall constitute a formal allocation of responsibilities among Named Fiduciaries." Plan Doc., at 67-68.

## IV.     CLASS ACTION ALLEGATIONS[6]

46.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following proposed class ("Class"):

> All persons, except Defendants and any fiduciary of the Plan and their immediate family members, who were participants in or beneficiaries of the JPMorgan Chase 401(k) Savings Plan at any time between October 8, 2020 to the date of judgment (the "Class Period").[7]

47.     The members of the Class are so numerous that joinder of all members is impractical. The 2023 Form 5500 lists 295,407 Plan "participants with account balances as of the end of the plan year." 2023 Form 5500, at 2.

---

[6] Although this is a proposed class action, the allegations in this complaint are alternatively pled in derivative fashion on behalf of the Plan because class certification is not necessarily required for Plaintiff to prosecute claims on behalf of the Plan and all participants. *See, e.g.*, *In re: Wilmington Trust Corp.*, 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed derivatively on behalf of all plan participants without class certification, because of the nature of such claims). ERISA Section 502(a), 29 U.S.C. § 1132(a), authorizes pension plan participants to bring suit on behalf of a plan to recover losses to a plan.

[7] Plaintiff reserves his right to seek modification of the close of the Class Period in the event that further investigation/discovery reveals a more appropriate end period.

14

48.    Plaintiff's claims are typical of the claims of the members of the Class. Like other Class members, Plaintiff participated in the Plan and has suffered injuries as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiff consistently with other Class members, and managed the Plan as a single entity. Plaintiff's claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

49.    There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A.    Whether Defendants are a fiduciary of the Plan;

B.    Whether Defendants breached their fiduciary duty of prudence by engaging in the conduct described herein;

C.    The proper form of equitable and injunctive relief; and

D.    The proper measure of monetary relief.

50.    Plaintiff will fairly and adequately represent the Class, and has retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action, and anticipates no difficulty in the management of this litigation as a class action.

51.    This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

52.    In the alternative, certification under Rule 23(b)(2) is warranted because the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## V.    THE PLAN

53.    "Effective December 31, 2001, the Deferred Profit Sharing Plan of Morgan Guaranty Trust Company of New York and Affiliated Companies for United States Employees (which originally was effective August 1, 1976) ("Heritage Morgan 401(k) Plan") was merged into the Heritage Chase 401(k) Plan. Effective with such merger, the Heritage Chase 401(k) Plan was renamed the JPMorgan Chase

401(k) Savings Plan (the "Plan") and restated effective January 1, 2002." Plan Doc., at 1.

54.    "The Plan and its Trust are intended to qualify as a profit-sharing/stock bonus plan which meets all the requirements for qualification and tax-exemption under Sections 401(a), 401(k) and 401(m) of the Internal Revenue Code of 1986 ("Code")." *Id*., at 2.

55.    The Plan provides JPMorgan employees with an "opportunity to make saving and investment decisions for … long-term financial goals." SPD at, 2.

56.    "The 401(k) Savings Plan is a defined contribution plan." *Id*., at 8.

57.    Eligible employees are "automatically enrolled in the Plan approximately 31 days following [their] hire/eligibility date (*i.e*., the "grace period") unless [they] elect to enroll in the Plan on [their] own or opt out." *Id*., at 2.

58.    Included in "the Plan's investment funds as of January 1, 2019" was the "Stable Value Fund" – the JPMorgan SVF. *Id*., at 24.

59.    However, "[t]he Plan imposes limits on reallocations and transfers from the Stable Value Fund to the Short-Term Fixed Income Fund. [Plan participants] cannot transfer assets from the Stable Value Fund directly to the Short-Term Fixed Income Fund at any time. Also, if [Plan participants] request a transfer or reallocation from any other investment option in the Plan into the Short-Term Fixed

17

Income Fund, only those amounts that were not invested in the Stable Value Fund within the previous 90 days will be included in the transaction."

60.    At the end of 2020 $2,560,877,190 in Plan assets were invested in the JPMorgan SVF. *See* Schedule of Assets (Held at the end of Year) as of December 31, 2019, attached to 2019 Form 5500, at 62.

61.    By the end of 2023, $2,425,277,812 in Plan assets were invested in the JPMorgan SVF. *See* Schedule of Assets (Held at the end of Year) as of December 31, 2023, attached to 2023 Form 5500, at 80.

62.    The JPMorgan SVF consists of four GICs (Voya Contract MCA; Transamerica Contract; Metlife GAC; and Prudential Contract). *See* 2023 Auditor's Report, at 12.

63.    Each holder of the underlying funds in the JPMorgan SVF is a "Party-In-Interest as defined by ERISA." *See* Schedule of Assets (Held at the end of Year) as of December 31, 2023, attached to 2023 Form 5500, at 80.

## VI.    THE TOTALITY OF THE CIRCUMSTANCES DEMONSTRATES THAT DEFENDANTS FAILED TO ADMINISTER THE PLAN IN A PRUDENT MANNER

### A.    ERISA Fiduciaries Are Held to the Highest Standards Regarding Process and Methodology of Evaluating Investments

64.    As described in the "Parties" section above, Defendants were fiduciaries of the Plan.

65.     ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted). In addition to a duty to select prudent investments, under ERISA, a fiduciary "has a continuing duty to monitor [plan] investments and remove imprudent ones" that exist "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble I*, 135 S. Ct. at 1828; *see also Hughes*, 142 S. Ct. at 741.

66.     As stated by the DOL: ERISA "requires plan fiduciaries, when selecting and monitoring service providers and plan investments, to act prudently and solely in the interest of the plan's participants and beneficiaries. Responsible plan fiduciaries also must ensure that arrangements with their service providers are 'reasonable' and that only 'reasonable' compensation is paid for services. …" DOL 408(b)(2) Regulation Fact Sheet.

67.     The duty "…to act solely in the best interest of participants has been a key tenet of ERISA since its passage." "Best Practices for Plan Fiduciaries," at 36, published by Vanguard, 2019.[8]

68.     Acting in the sole interest of plan participants is all encompassing. A fiduciary must monitor all investment options in a 401(k) plan as a prudent

---

[8] Available at https://institutional.vanguard.com/iam/pdf/FBPBK.pdf?cbdForceDomain.

investment professional. *See* the U.S. Department of Labor, Employee Benefits Security Administration (EBSA)'s "Meeting Your Fiduciary Responsibilities," at 2 ("The duty to act prudently is one of a fiduciary's central responsibilities under ERISA. It requires expertise in a variety of areas, such as investments."), available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.

69.    A prudent investment professional, and hence a fiduciary, must regularly evaluate a fund's performance history, the portfolio manager's experience and tenure, changes to the fund's investment strategy, changes to the underlying assets in the investment, total assets under management within the fund, fees, and other relevant factors.

70.    With respect to investment returns, diligent investment professionals monitor the performance of their selected investments using appropriate industry-recognized "benchmarks" and prudently managed equivalents.

71.    The measurement of investments against prudently managed alternatives is critical given that these alternatives represent other investments available to a plan, which may increase the likelihood that participants reach/live their preferred lifestyle in retirement.

72.   Whether a plan fiduciary enlists the assistance of an investment manager, consultant, or advisor, the plan's fiduciaries are not relieved of fiduciary liability for selecting and monitoring the plan's investment options.

73.   It is black letter law that a fiduciary's duty to conduct an "independent investigation into the merits of a particular investment," is the "most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 435 (3d Circ. 1996). *Hughes*, 142 S. Ct. at 738 (noting ERISA fiduciaries are required to "conduct their own independent evaluation to determine which investments may by prudently included in the plan's menu of options.").

74.   To the extent plan fiduciaries have adopted an investment policy statement, those fiduciaries "must comply with the plan's written statements of investment policy, insofar as those written statements are consistent with the provisions of ERISA." *Lauderdale v. NFP Retirement, Inc.*, 2022 WL 17260510, at * 10 (S.D. Cal. Nov. 17, 2022). That is, the investment policy statement must be written with the sole interest of the plan participant in mind.

75.   Plaintiff did not have and does not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan, including Defendants' processes (and execution of such) for selecting, monitoring, and removing the Plan's investments because this information is solely within the possession of Defendants prior to discovery. *See Braden v. Wal-Mart Stores, Inc.*,

588 F.3d 585, 598 (8th Cir. 2009) ("If Plaintiffs cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendants, the remedial scheme of [ERISA] will fail, and the crucial rights secured by ERISA will suffer.").

76.     In fact, in an attempt to discover the details of the Plan's mismanagement, Plaintiff wrote to the Plan administrator to request, among other things, "all written instruments" governing or pertaining to the Plan, including "Investment Policy Statements, and amendments, exhibits, or appendices thereto" and "Investment Management Contracts, or other instruments under which the Plan was established or operated, and all amendments, exhibits, or appendices thereto," as well as any committee's meeting minutes. This request was made on September 11, 2024.

77.     By letter dated January 13, 2025, the Plan's administrator responded to Plaintiff's request. No investment policy statement, to the extent it exists, or meeting minutes, to the extent they exist, were produced in response to Plaintiff's request.

78.     Reviewing meeting minutes, when they exist, is the bare minimum needed to peek into a fiduciary's monitoring process. But in most cases, even that is not sufficient. For, "[w]hile the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not … suffice in every case to demonstrate prudence. Deliberative processes can vary in quality or

22

can be followed in bad faith. In assessing whether a fiduciary fulfilled her duty of prudence, we ask 'whether a fiduciary employed the *appropriate* methods to investigate and determine the merits of a particular investment,' not merely whether there were any methods whatsoever." *Sacerdote v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021) (emphasis in original).

79.    For purposes of this Complaint, Plaintiff has drawn reasonable inferences regarding these processes and methods based upon several factors as described below.

80.    Defendants' breaches of its fiduciary duties, relating to their overall decision-making, resulted in, *inter alia*, the selection (and maintenance) of the JPMorgan SVF in the Plan throughout the Class Period that wasted the assets of the Plan and the assets of participants because of unnecessary costs and underperformance.

**B.    Defendants Breached Their Fiduciary Duties by Causing the Plan to Offer the JPMorgan SVF**

**1.    Overview of GICs**

81.    For defined-contribution retirement plans, stable value investments are intended to provide participants with an option that protects their assets and is shielded from risks of loss, hence why they are called Guaranteed Investment Contracts or GICs.

23

82. GICs are issued by insurance companies in the form of a fixed annuity contract. Pursuant to the terms of those contracts, the GICs provide for a guaranteed rate of return or "crediting rate" during a specified period.

83. Large plans often offer "synthetic" stable value funds, like the JPMorgan SVF, which include several GICs.

### 2. The Plan's Inclusion of JPMorgan SVF

84. At all relevant times, Defendants maintained the authority to exercise control over the Plan's investments, including the Plan's JPMorgan SVF.

85. The Insurance Companies establish the crediting rates for their underlying GICs with the Plan. The Insurance Companies "guarantee that all qualified participant withdrawals will take place at the contract value." 2023 Auditor's Report, at 12; 401(k) Auditor's Report, at 11; Defined Contribution Plan Auditor's Report, at 10.

86. The Insurance Companies earn a "spread" equal to the difference between the crediting rate and the returns the Insurance Companies earn on the funds in their accounts.

### 3. There are Many GICs in the Marketplace with Competitive Crediting Rates

87. The marketplace for GICs is robust with many insurance companies offering GICs with competitive rates.

88.     Throughout the Class Period, identical or substantially identical stable value funds with higher crediting rates, and hence lower spreads, were available to the Plan, but were not selected by Defendants.

89.     The JPMorgan SVF in the Plan had underwhelming crediting rates when compared against stable value GICs provided by other comparable carriers for other retirement plans:

| Year | Plan Name | No. of Participants | Plan Assets | Insurance Carrier | Crediting Rate[9] |
|------|-----------|---------------------|-------------|-------------------|-------------------|
| 2020 | Baylor College of Medicine Retirement Plan | 12,905 | $1,493,377,139 | Lincoln Financial Group | 4.16% |
| | Alina 401(k) Retirement Savings Plan | 32,203 | $2,690,046,457 | Brighthouse Life Insurance Company | 3.72% |
| | HCC Insurance Holdings Inc. 401(k) Plan | 2,711 | $428,308,461 | Massachusetts Mutual Life Insurance Company | 3.56% |
| | American United Life Progress Sharing Plan and Trust | 2,699 | $435,970,029 | American United Life Insurance Company | 3.54% |
| | | 264,210 | $36,411,653,439 | **Voya** | **2.73%** |

[9] For crediting rates not identified in the plans' Form 5500s, the calculated yield is interest credited divided by the end of year balance.

| | | | | TransAmerica | 2.68% |
|---|---|---|---|---|---|
| | **JPMorgan 401(k) Plan** | | | MetLife | 2.88% |
| | | | | Prudential | 2.65% |
| | | | | | |
| 2021 | Gemba Group Annuity Plan | 969 | $118,565,852 | National Ohio Financial Services | 4.97% |
| | Baylor College of Medicine Retirement Plan | 13,391 | $1,692,013,731 | Lincoln Financial Group | 4.23% |
| | Holzer Health System 401(a) Profit Sharing Plan | 2,017 | $203,815,263 | American United Life Insurance Company | 4.02% |
| | American United Life Progress Sharing Plan and Trust | 3,183 | $493,267,284 | American United Life Insurance Company | 3.87% |
| | Gemba Group Annuity Plan | 969 | $118,565,852 | Principal Life Insurance Company | 3.84% |
| | **JPMorgan 401(k) Plan** | **275,009** | **$42,475,562,141** | Voya | 2.73% |
| | | | | TransAmerica | 2.68% |
| | | | | MetLife | 2.88% |
| | | | | Prudential | 2.65% |
| | | | | | |
| 2022 | International Imaging Materials Inc. Retirement | 445 | $59,443,888 | Lincoln National Life Insurance Co. | 4.89% |

26

| | | | | |
|---|---|---|---|---|
| | and Investment Plan | | | | |
| | Baylor College of Medicine Retirement Plan | 14,036 | $1,434,738,254 | Lincoln Financial Group | 4.37% |
| | American United Life Progress Sharing Plan and Trust | 3,235 | $439,262,320 | American United Life Insurance Company | 3.90% |
| | Jackson National Life Insurance Company Defined Contribution Plan | 4,650 | $1,149,061,601 | Jackson National Life Insurance | 3.83% |
| | Alina 401(k) Retirement Savings Plan | 34,554 | $2,678,277,538 | Brighthouse Life Insurance Company | 3.69% |
| | Trugreen Profit Sharing and Retirement Plan | 11,408 | $371,495,784 | Massachusetts Mutual Life Insurance Company | 3.67% |
| | **JPMorgan 401(k) Plan** | **287,908** | **$36,425,262,388** | **Voya** | **2.40%** |
| | | | | **TransAmerica** | **2.41%** |
| | | | | **MetLife** | **2.52%** |

| | | | | Prudential | 2.48% |
|---|---|---|---|---|---|
| | | | | | |
| 2023 | Valley Hospital Retirement Defined Contribution Plan | 4,282 | $550,230,744 | Lincoln National Life Insurance Co. | 4.57% |
| | Mattel, Inc. Personal Investment Plan | 7,427 | $1,167,576,000 | Metropolitan Tower Life Insurance Co. | 3.71% |
| | Pomona Valley Hospital Medical Center Retirement Savings Plan | 4,219 | $525,201,271 | Lincoln National Life Insurance Co. | 3.64% |
| | Auto-Owners Insurance Company Retirement Savings Plan | 8,582 | $772,874,102 | Auto-Owners Life Insurance Company | 3.48% |
| | **JPMorgan 401(k) Plan** | **295,407** | **$44,020,023,822** | **Voya** | **3.09%** |
| | | | | **TransAmerica** | **3.11%** |
| | | | | **MetLife** | **3.19%** |
| | | | | **Prudential** | **3.16%** |

90.    Throughout the Class Period, the JPMorgan SVF underperformed the

comparator funds by an average of almost 30% as demonstrated in the table below.

| Year | JPMorgan SVF Average Rate of Return | Comparator Average Rate of Return | JPMorgan SVF Percentage of Underperformance |
|---|---|---|---|
| 2020 | 2.74% | 3.75% | 26.93% |
| 2021 | 2.74% | 4.19% | 34.61% |
| 2022 | 2.45% | 4.06% | 39.66% |
| 2023 | 3.14% | 3.85% | 18.44% |

| Average Underperformance during Class Period | 29.91% |
|---|---|

91.    In short, because the Plan held over $30 billion in assets under management at the start of the Class Period, it had considerable leverage to bargain for higher crediting rates.

92.    A prudent fiduciary would have known that other providers of fixed annuities offer substantially identical, better-performing stable value investments. A prudent fiduciary could have accomplished this goal by demanding higher crediting rates from the Insurance Companies and/or by submitting requests for proposals to the Insurance Companies and other providers of stable value investments.

93.    By selecting the JPMorgan SVF with underperforming crediting rates, Defendants failed to provide participants with an option that maximized the value of their investments.

94.    With the massive amount of assets under management in the JPMorgan SVFs, the losses suffered by Plan participants were devastating.  Every additional expense imposed upon the participants compounds and reduces the value of their retirement savings over time. *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015). For example, a 1% higher fee over 35 years makes a 28% difference in retirement assets at the end of a participant's career.[10]

---

[10] Look at 401(k) Plan Fees, UNITED STATES DEPT. OF LABOR at 2 (Sept. 2019), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource center/publications/401k-plan-fees.pdf (accessed Feb. 14, 2025).

## COUNT I
### Breaches of Fiduciary Duty of Prudence
### (Against Investment Committee Defendants)

95.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

96.     At all relevant times, the Investment Committee and its members ("Prudence Defendants") were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

97.     As fiduciaries of the Plan, the Prudence Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the assets of the Plan for the sole and exclusive benefit of Plan's participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

98.     The Prudence Defendants breached these fiduciary duties in multiple respects as discussed throughout this Complaint. Prudence Defendants did not make decisions regarding the Plan's investment lineup based solely on the merits of each investment and what was in the interest of Plan's participants. Instead, the Prudence

Defendants selected and retained investment options in the Plan despite poor performance in relation to other comparable investments.

99.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses due to excessive costs and lower net investment returns. Had Prudence Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and Plan's participants would have had more money available to them for their retirement.

100.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Prudence Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

101.    The Prudence Defendants knowingly participated in each breach, knowing that such acts were a breach, and failed to make any reasonable and timely effort under the circumstances to remedy the breaches.

## COUNT II
### Failure to Adequately Monitor Other Fiduciaries
(Asserted against JPMorgan, Board, Benefits Executive and Selection Committee Defendants)

102.    Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

31

103. JPMorgan, the Board, the Benefits Executive, and the Selection Committee (the "Monitoring Defendants") had the authority to appoint and remove members of the Investment Committee, and the duty to monitor the Investment Committee and were aware that the Investment Committee Defendants had critical responsibilities as fiduciaries of the Plan.

104. In light of this authority, the Monitoring Defendants had a duty to monitor the Investment Committee Defendants to ensure that the Investment Committee Defendants were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Investment Committee Defendants were not fulfilling those duties.

105. The Monitoring Defendants also had a duty to ensure that the Investment Committee Defendants possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; and reported regularly to the Monitoring Defendants.

106. The Monitoring Defendants breached their fiduciary monitoring duties by, among other things:

    (a)    Failing to monitor and evaluate the performance of the Investment Committee Defendants or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Investment Committee Defendants' imprudent actions; and

32

(b)    failing to remove Investment Committee members whose performance was inadequate, all to the detriment of the Plan and Plan's participants' retirement savings.

107.    As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars of losses. Had the Monitoring Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

108.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Monitoring Defendants are liable to restore to the Plan all losses caused by their failure to adequately monitor the Investment Committee Defendants. In addition, Plaintiff is entitled to equitable relief and other appropriate relief as set forth in their Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel;

C.    A Declaration that the Defendants have breached their fiduciary duties under ERISA;

D.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.    An order requiring the Company to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, as necessary to effectuate said relief, and to prevent the Defendants' unjust enrichment;

F.    Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.    An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

34

H.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan fiduciaries deemed to have breached their fiduciary duties;

I.      An award of pre-judgment interest;

J.      An award of costs pursuant to 29 U.S.C. § 1132(g);

K.      An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L.      Such other and further relief as the Court deems equitable and just.

Dated: March 14, 2025                    Respectfully submitted,

                                         */s/ Mark K. Gyandoh*
                                         Mark K. Gyandoh, Esquire
                                         NJ Attorney ID #02562201
                                         James A. Maro, Esquire
                                         NJ Attorney ID #017052000
                                         **CAPOZZI ADLER, P.C.**
                                         312 Old Lancaster Road
                                         Merion Station, PA 19066
                                         Email: markg@capozziadler.com
                                                 jamesm@capozziadler.com
                                         Tel.: (610) 890-0200
                                         Fax: (717) 232-3080

                                         *Counsel for Plaintiff and the Putative Class*

35